**No. 24-1788**

# In the
# United States Court of Appeals
## for the Sixth Circuit

GRACE CHEN and DANIELLE VILLARREAL,

*Plaintiffs-Appellants,*

v.

HILLSDALE COLLEGE,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids, No. 1:23-cv-01129.
The Honorable Jane M. Beckering, Judge Presiding.

## BRIEF OF PLAINTIFFS-APPELLANTS
## GRACE CHEN and DANIELLE VILLARREAL

Mark P. Chalos
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
222 2nd Avenue South
Suite 1640
Nashville, TN 37201
(615) 313-9000

Annika K. Martin
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street
8th Floor
New York. NY 10013
(212) 355-9500

Michelle A. Lamy
Caitlin M. Woods
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street
29th Floor
San Francisco, CA 94111
(415) 956-1000

*Attorneys for Appellants*

 

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 24-1788            Case Name: Grace Chen, et al v. Hillsdale College

Name of counsel: Mark P. Chalos

Pursuant to 6th Cir. R. 26.1, Grace Chen and Danielle Villarreal
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

    No.

---

CERTIFICATE OF SERVICE

I certify that on _____ October 2, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Mark P. Chalos

_____

_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

CORPORATE DISCLOSURE STATEMENT ......................................................i

STATEMENT IN SUPPORT OF ORAL ARGUMENT .........................1

STATEMENT OF JURISDICTION...............................................1

STATEMENT OF ISSUES ...........................................................2

STATEMENT OF THE CASE........................................................2

I.    FACTUAL BACKGROUND.................................................4

II.    PROCEDURAL BACKGROUND .......................................11

SUMMARY OF ARGUMENT ......................................................12

ARGUMENT .............................................................................13

I.    STANDARD OF REVIEW ................................................13

II.    THE DISTRICT COURT ERRED IN CONCLUDING
APPELLANTS FAILED TO STATE A CLAIM FOR NEGLIGENCE.....14

III.    THE DISTRICT ERRED IN CONCLUDING APPELLANTS
FAILED TO STATE A CLAIM FOR INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS ..................................................21

    A.    The District Court Ignored Key Allegations ....................21

    B.    Appellants Plausibly Allege Hillsdale's Conduct Was Extreme
and Outrageous..................................................25

    C.    Appellants Plausibly Allege Hillsdale's Conduct Was
Intentional or Reckless .......................................27

    D.    Appellants Plausibly Allege Hillsdale's Conduct Caused Severe
Emotional Distress ............................................28

IV.    THE DISTRICT ERRED IN CONCLUDING APPELLANTS
FAILED TO STATE A CLAIM FOR SEX DISCRIMINATION
UNDER MICHIGAN'S ELLIOT LARSEN CIVIL RIGHTS ACT ..........29

    A.    Appellants Adequately Allege Disparate Treatment .........30

    B.    Appellants Adequately Allege Disparate Impact...............36

CONCLUSION.........................................................................40

DESIGNATION OF RELEVANT DOCUMENTS .............................42

# **TABLE OF CONTENTS**
(continued)

**Page**

CERTIFICATE OF COMPLIANCE........................................................................43

CERTIFICATE OF SERVICE ...............................................................................44

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Al-Watan v. Am. Airlines, Inc.*,
   570 F. Supp. 2d 925 (E.D. Mich. 2008) ...........................................................25

*Alspaugh v. Comm'n. on Law Enf't Standards*,
   246 Mich. App. 547 (2001) ................................................................................36

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................12, 14, 40

*Avila v. Citrus Cmty. Coll. Dist.*,
   38 Cal. 4th 148 (2006) .......................................................................................17

*Barlow v. State*,
   540 P.3d 783 (Wash. 2024) ...............................................................................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................12

*Berrington v. Wal-Mart Stores, Inc.*,
   799 F. Supp. 2d 772 (W.D. Mich. 2011), *aff'd*, 696 F.3d 604 (6th
   Cir. 2012) ...........................................................................................................15

*Brent v. Wayne Cnty. Dep't of Hum. Servs.*,
   901 F.3d 656 (6th Cir. 2018) .................................................................13, 22, 25

*Brown v. MGM Grand Casino*,
   2023 WL 5489023 (E.D. Mich. Aug. 24, 2023)...........................................30, 32

*Butts v. McCullough*,
   237 F. App'x 1 (6th Cir. 2007) ..........................................................................39

*Carlson v. CSX Transp., Inc.*,
   758 F.3d 819 (7th Cir. 2014) .............................................................................31

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Chen-Oster v. Goldman, Sachs & Co.*,
325 F.R.D. 55 (S.D.N.Y. 2018) ...........................................................33

*Crane v. Mary Free Bed Rehab Hosp.*,
634 F. App'x 518 (6th Cir. 2015).........................................................32

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999)...........................................................................35

*Dawe v. Bar-Levav & Assoc.*,
289 Mich. App. 380 (2010) ................................................................18

*Doe 1 v. Baylor Univ.*,
240 F. Supp. 3d 646 (W.D. Tex. 2017) ................................19, 35, 36

*Doe v. Baum*,
903 F.3d 575 (6th Cir. 2018) ..............................................................14

*Duranceau v. Alpena Power Co.*,
250 Mich. App. 179 (2002) ................................................................30

*Eide v. Kelsey-Hayes Co.*,
431 Mich. 26 (1988) ...........................................................................29

*El-Hallani v. Huntington Nat'l Bank*,
623 F. App'x 730 (6th Cir. 2015) ...............................................14, 23

*Geib v. Amoco Oil Co.*,
29 F.3d 1050 (6th Cir. 1994) ..............................................................16

*Gilliam v. Ordiway*,
147 F. Supp. 3d 664 (E.D. Mich. 2015) ................................27, 28, 29

*Halabicky v. Univ. of Mich.*,
2009 WL 912629 (E.D. Mich. Mar. 30, 2009)....................................38

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Haverbush v. Powelson*,
217 Mich. App. 228 (1996) ...............................................................27

*Horne v. Pentastar Aviation, LLC*,
2024 WL 1607017 (E.D. Mich. Apr. 12, 2024) .................................31

*In re Certified Question from Fourteenth Dist. Ct. of Appeals of Tex.*,
479 Mich. 498 (2007) ...................................................................16, 19

*In re Doe*,
2006 WL 475285 (Mich. Ct. App. Feb. 28, 2006) .............................16

*Johnson v. Outback Lodge & Equestrian Ctr., LLC*,
2016 WL 930738 (Mich. Ct. App. Mar. 10, 2016)............................16

*Karasek v. Regents of Univ. of Cal.*,
956 F.3d 1093 (9th Cir. 2020) ................................................19, 34, 36

*Keys v. Humana, Inc.*,
684 F.3d 605 (6th Cir. 2012) ............................................................30

*Kolokithas v. Alpena Pub. Sch. Dist.*,
345 Mich. App. 35 (2022) .................................................................29

*Lewis v. LeGrow*,
258 Mich. App. 175 (2003) ...........................................21, 22, 27, 28

*Linebaugh v. Sheraton Mich. Corp.*,
198 Mich. App. 335 (1993) ...............................................................27

*Loc. 2507, Uniformed EMTs, Paramedics & Fire Inspectors v. City of
N.Y. on behalf of Fire Dep't of City of N.Y.*,
2024 WL 4276495 6 (S.D.N.Y. Sept. 24, 2024) ...............................33

*Lyman v. Montclair at Partridge Creek, LLC*,
2023 WL 6096678 (E.D. Mich. Sept. 18, 2023) ..........................38, 39

## TABLE OF AUTHORITIES
### (continued)

**Page**

*O'Neal v. MCC Mecosta, LLC*,
   2023 WL 461844 (Mich. Ct. App. Jan. 26, 2023)..............................................18

*Posso v. Niagara Univ.*,
   518 F. Supp. 3d 688 (W.D.N.Y. 2021)........................................................35, 36

*Radtke v. Everett*,
   442 Mich. 368 (1993) ...................................................................................29, 32

*Regents of Univ. of Cal. v. Super. Ct.*,
   4 Cal. 5th 607 (2018) ...........................................................................................17

*Roulo v. Auto. Club of Mich.*,
   386 Mich. 324 (1971) ...........................................................................................14

*Simpson v. Univ. of Colo. Boulder*,
   500 F.3d 1170 (10th Cir. 2007) .............................................................19, 35, 36

*Smith v. Blue Cross Blue Shield of Mich.*,
   2024 WL 3991245 (E.D. Mich. Aug. 29, 2024)..................................................30

*Speed Way Transp., LLC v. City of Gahanna, Ohio*,
   2023 WL 2293099 (6th Cir. Mar. 1, 2023) ........................................................14

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*,
   576 U.S. 519 (2015)..............................................................................................38

*Univ. of Denver v. Doe*,
   547 P.3d 1129 (Colo. 2024)..................................................................................20

*Varlesi v. Wayne State Univ.*,
   909 F. Supp. 2d 827 (E.D. Mich. 2012) ..............................................................32

*Wade v. Knoxville Utilities Bd.*,
   259 F.3d 452 (6th Cir. 2001) ...............................................................................23

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Ware v. Univ. of Vt. & State Agric. Coll.*,
  722 F. Supp. 3d 379 (D. Vt. 2024) ....................................................18, 19, 35, 36

W*hite v. Baxter Healthcare Corp.*,
  533 F.3d 381 (6th Cir. 2008) ...............................................................................31

**Statutes**

28 U.S.C. § 1291 .......................................................................................................1

28 U.S.C. § 1332 .......................................................................................................1

MCL 37.2102(1) ......................................................................................................29

MCL 37.2103(k)(*iii*) ...............................................................................................30

**Court Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................*passim*

Fed. R. Civ. P. 15(a)................................................................................................23

Fed. R. Civ. P. 23(c).................................................................................................11

**Treatises**

Restatement (Second) of Torts, § 46 (1965), Comment .........................................27

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Grace Chen and Danielle Villarreal ("Appellants") respectfully request oral argument because it will afford the Parties the opportunity to address any questions the Court may have, including regarding Appellants' allegations and the context of the proceedings below.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on the diversity of the Parties, as Appellant Chen is a citizen of California, Appellant Villarreal is a citizen of Nebraska, Appellee Hillsdale College ("Hillsdale") is headquartered, incorporated, and operates in Michigan, and the amount in controversy exceeds $75,000.00.  RE 19, Page ID # 225-26, ¶ 4. *See also* RE 55, Page ID # 892 ("Plaintiffs are not citizens of Michigan and filed their Complaint under [] this Court's diversity jurisdiction[.]").

On September 13, 2024, the district court granted Hillsdale's Motion to Dismiss and dismissed Hillsdale's Motion to Strike Class Allegations as moot (RE 55, Page ID # 889-920, "Order"), and upon noting that the Order resolved all pending claims, entered judgment to close the case (RE 56, Page ID # 921, "Judgment").  On September 17, 2024, Appellants timely filed a notice of appeal (RE 57, Page ID # 922, "Notice").  Thus, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.      Did the district court err in dismissing with prejudice at the initial pleadings stage Appellants' negligence claim?

2.      Did the district court err in dismissing with prejudice at the initial pleadings stage Appellants' intentional infliction of emotional distress claim ("IIED")?

3.      Did the district court err in dismissing with prejudice at the initial pleadings stage Appellants' claim for sex discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA")?

## STATEMENT OF THE CASE

Appellee is a private university in Hillsdale, Michigan, that holds itself out as offering a *particularly* safe educational environment for female students.  RE 19, Page ID # 224.  The reality is different:  female students at Hillsdale face a known and unusually high risk of sexual assault as a result of Hillsdale's failure to have or enforce proper policies and procedures regarding sexual misconduct.  RE 19, Page ID # 221.  Hillsdale knew of and disregarded this increased risk to young women.  RE 19, Page ID # 224; *see also id*., Page ID # 227, ¶¶ 12-13 (detailing student complaints and investigative reporting on Hillsdale's inadequate Policy); *id*., Page ID # 231-33, ¶¶ 26-31 (same).

Appellants are two young women who were harmed in the environment Hillsdale created. Both were raped by male peers while undergraduate students at Hillsdale. RE 19, Page ID # 221-22. Both reported those rapes to Hillsdale. *Id*. And, in both cases, Hillsdale's woefully inadequate response reflects a broader pattern of deliberate, institutional indifference to the safety and well-being of Hillsdale's female student body. *Id*. Hillsdale's treatment of both women—and countless others—violated Michigan tort and civil rights law.[1] This case is about both Hillsdale's conduct in creating an unsafe environment by empowering predators, and Hillsdale's conduct when sexual assaults are reported, which causes further harm to survivors.

The district court held under Federal Rule of Civil Procedure 12(b)(6) that Appellants failed to state claims for negligence, IIED, and violations of the ELCRA. *See* RE 55, Page ID # 889-920. The district court's sweeping conclusions as to each claim—improperly made with prejudice, and without the benefit of a single document in discovery—are contrary to law and should be reversed.[2]

---

[1] Appellants do not appeal the district court's dismissal of their claims under Title IX of the Education Amendments of 1972 ("Title IX") or their claim for violations of Michigan's Consumer Protection Act ("MCPA"). RE 55, Page ID # 908-19.

[2] Because the district court dismissed each of Appellants' claims with prejudice and denied Hillsdale's Motion to Strike Class Allegations as moot, the Order does not engage Appellants' class allegations. RE 55, Page ID # 889, at n.1.

*Footnote continued on next page…*

I.      **FACTUAL BACKGROUND**

Hillsdale is a four-year college located in Hillsdale, Michigan.  RE 19, Page ID # 225, ¶ 3.  Hillsdale's policies and practices are purportedly tailored to Christian values.  RE 19, Page ID # 226, ¶¶ 7-9.  Hillsdale proudly disavows best practices for addressing sexual misconduct in the university setting, and instead crafted its own "Sexual Misconduct Policy" that defines "morally responsible sexual acts to be those occurring in marriage and between the sexes."  RE 19, Page ID # 229-30, ¶¶ 21-22.  This language effectively renders the rest of the Policy moot, and discourages female students who do engage in such activity from reporting for fear of being investigated for violating the Policy.  RE 19, Page ID # 229-30, ¶¶ 22-24.

Appellants allege that as a result of this Policy—which is inherently contradictory, confusing, and ambiguous—Hillsdale's female students face "a heightened risk of sexual assault, as compared to students at other colleges."  RE 19, Page ID # 222.  When female students who in fact experience sexual violence come forward, Hillsdale also fails to effectively investigate their assaults, and fails to respond to their reports with either prompt or appropriate remedial action.  RE

---

Accordingly, neither the Order nor this appeal addresses whether Appellants can proceed with a putative class action, should their case be remanded.

19, Page ID # 239, ¶ 67.  The result is a sexually discriminatory environment in which female students are deprived of an equal educational experience.  *Id*.

Appellant Chen began at Hillsdale in the fall of 2021.  RE 19, Page ID # 225, ¶ 1.  She was drawn to the college because she believed it would offer a safe learning environment.  RE 19, Page ID # 229, ¶ 18.  As a Hillsdale student, she participated in athletic and extracurricular activities on campus, including as a long and triple jumper on the track team.  RE 19, Page ID # 225, ¶ 1.  In November 2021, only months into her freshman year, Ms. Chen was raped by a fellow track athlete in a Hillsdale dormitory.  RE 19, Page ID # 239, ¶ 68.  Over Ms. Chen's objections, this assailant penetrated Ms. Chen with his fingers, forced Ms. Chen to masturbate his penis, and tried to penetrate Ms. Chen with his penis.  *Id*. Throughout the rape, Ms. Chen repeatedly refused consent and expressed terror. *Id*.  She was left traumatized by the rape, and was later diagnosed with generalized anxiety disorder and post-traumatic stress disorder ("PTSD").  RE 19, Page ID # 240, ¶ 69; *id.*, Page ID # 243, ¶ 99.

Ms. Chen reported the rape to a Hillsdale counselor.  RE 19, Page ID # 240, ¶¶ 70-71.  Though this counselor acknowledged that Ms. Chen was assaulted, the counselor warned that Hillsdale would take no action without "concrete evidence." RE 19, Page ID # 240, ¶ 71.  Ms. Chen therefore presented a written report of her assault to the Dean of Women.  RE 19, Page ID # 240, ¶¶ 73-74.  This Dean

acknowledged she believed Ms. Chen's account, yet she suggested Ms. Chen may face a defamation lawsuit by her assailant just for having reported the assault. RE 19, Page ID # 240, ¶ 75. The Dean therefore arranged for Ms. Chen to meet with an outside lawyer hired by Hillsdale, to "make sure that there was nothing in [Ms. Chen's written report] that her assailant could use against her in a counter-suit." RE 19, Page ID # 240, ¶¶ 75-76.

Hillsdale's outside lawyer ultimately acknowledged that Ms. Chen's assailant *did not deny her account* and *did not refute her allegations*. RE 19, Page ID # 241, ¶¶ 77-78; *id*., Page ID # 258, ¶ 175. The lawyer nevertheless downplayed the severity of the rape, and refused to interview any of the witnesses Ms. Chen identified in her written report. RE 19, Page ID # 241, ¶¶ 79-80. The lawyer also expressed the factually and legally erroneous conclusion that a lack of "obvious force" indicated Ms. Chen had not actually been raped. RE 19, Page ID # 241, ¶ 82. The lawyer further concluded that because Ms. Chen's assailant was already doing community service and attending AA meetings as discipline for a different infraction, he should not be disciplined again. RE 19, Page ID # 241, ¶ 83. Remarkably, the lawyer also suggested that Ms. Chen "put the sexual assault behind her so she could be friends with her assailant in the future." RE 19, Page ID # 241, ¶ 84. When Ms. Chen's mother (Dr. Chen) requested a meeting about this inadequate investigation, Hillsdale initially ignored Dr. Chen, then referred her

to Hillsdale's general counsel.  RE 19, Page ID # 242, ¶¶ 88-90.  The general

counsel refused Dr. Chen's request for written findings, suggesting—

notwithstanding the rapist's admission of guilt—that Ms. Chen had lied about the

assault.  RE 19, Page ID # 242, ¶¶ 91-93.  Finally, despite acknowledging that a

no-contact order should be put in place, Hillsdale never implemented one, and Ms.

Chen continued to encounter her rapist on campus.  RE 19, Page ID # 241-43, ¶¶

85-87, 99.  The assault, mistreatment by Hillsdale, and continued exposure to her

rapist caused and causes Ms. Chen severe emotional distress, impacting her

academic and athletic performance.  RE 19, Page ID # 243, ¶ 99.

    Appellant Villarreal began at Hillsdale in the fall of 2020.  RE 19, Page ID #

225, ¶ 2.  She was drawn to Hillsdale because she believed it would be a safe place

to attend college.  RE 19, Page ID # 229, ¶ 19.  As a Hillsdale student, she

participated in athletic and extracurricular activities.  RE 19, Page ID # 225, ¶ 2.

In August 2021, shortly after returning to Hillsdale for her sophomore year, Ms.

Villarreal was raped by a Hillsdale baseball player.  RE 19, Page ID # 243, ¶ 100.

The assailant propositioned Ms. Villarreal for sex.  *Id*.  After she declined, the

assailant suddenly changed his demeanor, frightening Ms. Villarreal, and

penetrated her with his penis.  *Id*.  Ms. Villarreal was paralyzed with fear during

the rape.  *Id*.  She subsequently developed depression, which had a negative impact

on her schoolwork and social life.  RE 19, Page ID # 246, ¶ 123.  Ms. Villarreal

-7-

ultimately withdrew from Hillsdale.  RE 19, Page ID # 222.  She has been

prescribed antidepressants to treat the depression.  RE 19, Page ID # 246, ¶ 123.

Ms. Villarreal reported the rape to both local police and to Hillsdale's Dean

of Men.  RE 19, Page ID # 244, ¶¶ 101-02.  The Dean instructed Ms. Villarreal to

meet with an outside lawyer who would investigate the rape.  RE 19, Page ID #

244, ¶ 102.  Though this lawyer immediately interviewed Ms. Villarreal, she

waited weeks to interview Ms. Villarreal's rapist.  RE 19, Page ID # 244, ¶¶ 105-

06.  Ultimately, the rapist admitted to the lawyer that he had, at minimum,

penetrated Ms. Villarreal *without receiving consent*, while Ms. Villarreal

repeatedly confirmed to the lawyer that she had, in fact, *affirmatively denied*

*consent*.  RE 19, Page ID # 245, ¶ 110.  The lawyer nevertheless suggested to Ms.

Villarreal that she was to blame for the rape, citing Ms. Villarreal's romantic

contact with her rapist earlier in the evening.  RE 19, Page ID # 245, ¶ 109.  In a

later meeting with both Ms. Villarreal and her parents, the lawyer confirmed she

had taken too long to conduct the "investigation," confirmed again the details of

Ms. Villarreal's account, yet concluded Ms. Villarreal's rapist should not be

expelled.  RE 19, Page ID # 245, ¶¶ 112-14.  Instead, Hillsdale claimed it was

placing the rapist on "social probation" and suspending him from the baseball

team.  RE 19, Page ID # 245, ¶¶ 115.

Hillsdale's "punishment" of Ms. Villarreal's rapist was not enforced. Ms. Villarreal continued to see him at social events and carrying baseball equipment on campus, and he was back on the baseball team by spring. RE 19, Page ID # 245-46, ¶¶ 116-20. When Ms. Villarreal's parents inquired about this, Hillsdale's general counsel threatened them with *consequences for Ms. Villarreal*, and suggested to them that perhaps Ms. Villarreal had lied about being raped. RE 19, Page ID # 246, ¶¶ 121-22. Ms. Villarreal was thereafter forced to see her rapist on a daily basis, and ultimately forced to leave Hillsdale entirely to protect her safety and well-being. RE 19, Page ID # 246, ¶ 123. The rape and Hillsdale's response had a profound negative effect on Ms. Villarreal's emotional health, for which she now receives treatment. *Id.*

Appellants allege their experiences were the predictable result of Hillsdale's intentionally inadequate "Sexual Misconduct Policy." RE 19, Page ID # 221-23. To be clear: Hillsdale proudly forgoes government funding "so as to be 'unfettered' by government mandates," and publicly acknowledges that "the college does not follow Title IX guidelines on sex discrimination and the handling of sexual assault cases." RE 19, Page ID # 222-23, n.2; *see also id.*, Page ID # 226-27, ¶¶ 10-11. The Policy therefore is not designed to—and does not—contain even the most basic elements of a functioning policy. RE 19, Page ID # 223. Among other deficiencies, the Policy: fails to delineate what is prohibited

behavior; fails to specify consequences for prohibited behavior; fails to discuss consent; fails to specify under what circumstances confidentiality will be maintained; and leaves so much to the school's discretion that it is impossible to know what actions or decisions to expect. RE 19, Page ID # 222-223; *id.*, Page ID # 229-238, ¶¶ 21-60. Moreover, as reflected by Appellants' experiences, Hillsdale does not bother to enforce its facially deficient Policy: when a student reports their sexual assault, Hillsdale conducts incomplete investigations that do not comport with even the Policy's minimum standards, and instead, Hillsdale retaliates against reporting survivors. RE 19, Page ID # 224; *id.*, Page ID # 231-233, ¶¶ 26-28. Hillsdale does so despite long ago being made aware—through both the inordinate degree of sexual assaults on campus and through calls for reform from its student body—that the Policy discourages reporting and creates a heightened risk of sexual assault on the Hillsdale campus. RE 19, Page ID # 224; *see also id.*, Page ID # 227, ¶¶ 12-13 (detailing student complaints and investigative reporting on Hillsdale's inadequate Policy); *id.*, Page ID # 231-33, ¶¶ 26-31 (same).

Appellants brought this case to seek accountability from Hillsdale for past harms, and to prevent other students from suffering under this inadequate Policy. RE 19, Page ID # 224. Appellants therefore filed suit on behalf of themselves and a proposed class of all female students who are or were enrolled at Hillsdale from October 25, 2017 onwards. RE 19, Page ID # 247, ¶ 124.

## II.   **PROCEDURAL BACKGROUND**

On October 25, 2023, Appellants brought this proposed class action against Hillsdale, alleging violations of Michigan tort and civil rights law, as well as discrimination and retaliation under Title IX.  Hillsdale moved to dismiss under Rule 12(b)(6) and to strike the class allegations under Rule 23(c).  Appellants responded with an Amended Complaint filed on January 11, 2024, after which the district court dismissed Hillsdale's original motions as moot.  RE 19, Page ID # 221-69.

On February 1, 2024, Hillsdale moved to dismiss Appellants' Amended Complaint under Rule 12(b)(6), and on February 5, 2024, Hillsdale filed a motion to strike the class allegations from Appellants' Amended Complaint under Rule 23(c).  RE 24-2, Page ID # 298-375.  Appellants filed oppositions to both motions.  RE 40-1, Page ID # 656-715.  Hillsdale filed replies.  RE 49-2, Page ID # 812-47.  The district court declined to hear oral argument on the motions.  RE 55, Page ID # 893.  On September 13, 2024, the district court issued an order dismissing Appellants' Amended Complaint with prejudice, and dismissing Appellee's motion to strike class allegations as moot.  RE 55, Page ID # 889-920.  Stating that its Order "resolve[d] all pending claims," the district court entered judgment to close the case.  RE 55, Page ID # 920; RE 56, Page ID # 921.  On September 17, 2024, Appellants filed a timely notice of appeal.  RE 57, Page ID # 922.

## SUMMARY OF ARGUMENT

This lawsuit was filed in October 2023. The parties never once appeared before the Court, and discovery was never opened. On the basis of the pleadings alone, the Court dismissed the entire case—federal and state law claims, individual and class allegations alike—with prejudice.

The Order contains improper fact-finding, factual inaccuracies, and legal errors. The Order is also noticeably devoid of any detail as to Appellants' assaults and interactions with Hillsdale—outright ignoring key factual allegations made in support of Appellants' claims. As a whole, the Order is out of step with a district court's task on a Rule 12(b)(6) motion: to determine whether the complaint's allegations, accepted as true and construed in the light most favorable to the plaintiffs, plausibly state a claim to relief. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

For the reasons discussed herein, the Court should therefore vacate the Order's entry of judgment without a full—or even partial—factual record, as to Appellants' negligence, IIED, and ELCRA claims. As to all three claims, the Amended Complaint meets the pleading requirements clarified in *Twombly* and *Iqbal*. *First*, the district court's finding that Appellants failed to state a claim for negligence was legal error because Hillsdale owed a duty of care to Appellants as a matter of public policy. Any finding to the contrary would be one of first

-12-

impression under Michigan law, and it was made without certification of the question to the Michigan Supreme Court for determination. *Second*, the district court's finding that Appellants failed to state a claim for IIED was legal error because Hillsdale's conduct toward Appellants as pleaded in the complaint was extreme and outrageous, and sufficiently alleged to have been committed with the requisite intent or recklessness. *Third*, the district court's finding that Appellants failed to state a claim for sex discrimination in violation of Michigan's ELCRA was legal error because Appellants adequately alleged both disparate treatment and disparate impact theories under the statute.

## **ARGUMENT**

## I.   **STANDARD OF REVIEW**

This Court reviews *de novo* a district court's order granting a motion to dismiss under Rule 12(b)(6), affirming the district court "only if the complaint lacks sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 675-76 (6th Cir. 2018) (cleaned up). The Court must construe the complaint in the light most favorable to the plaintiffs, accept all allegations in the complaint as true, and draw all reasonable inferences in the plaintiffs' favor. *Id*. at 676. After doing so, "[i]f it is at all plausible (beyond a wing and a prayer) that a plaintiff would

succeed if he proved everything in his complaint, the case proceeds." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

Plaintiffs need not produce evidence to support their claims at the pleading stage because, until discovery has begun, plaintiffs "simply may not have access to all the facts." *Speed Way Transp., LLC v. City of Gahanna, Ohio*, 2023 WL 2293099, at *5 (6th Cir. Mar. 1, 2023) (citations omitted). This is especially true where, as here, a pattern or practice of discrimination is at issue: "the court must be aware that the plaintiff will have limited access to the crucial information regarding how the defendant treated other[s]." *El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 735 (6th Cir. 2015). Indeed, while plaintiffs are not "entitled to discovery," *Iqbal*, 556 U.S. at 686, the Sixth Circuit has made clear that courts reviewing a motion to dismiss must take into account logistical circumstances that may prevent plaintiffs from obtaining evidence supporting their claims, and "adjust the plausibility threshold appropriately to account for these difficulties," *El-Hallani*, 623 F. App'x at 735.

## II.   THE DISTRICT COURT ERRED IN CONCLUDING APPELLANTS FAILED TO STATE A CLAIM FOR NEGLIGENCE

To state a claim for negligence, a plaintiff must establish: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages. *Roulo v. Auto. Club of Mich.*, 386 Mich. 324, 328

(1971).  In dismissing Appellants' negligence claim, the district court addressed only the first element—duty—and held as a matter of law that Hillsdale did not owe Appellants a duty.  RE 55, Page ID # 897-901.  The district court gave short shrift to Appellants' argument that they were owed a duty as a matter of public policy.  *See* RE 55, Page ID # 900 ("declining to carve an unprecedented category of public policy claims out of Michigan law") (quoting *Berrington v. Wal-Mart Stores, Inc.*, 799 F. Supp. 2d 772, 776 (W.D. Mich. 2011), *aff'd*, 696 F.3d 604, 609-10 (6th Cir. 2012)).  In so holding, the district court contradicted a mandate from the Michigan Supreme Court to more carefully weigh public policy concerns. The district court also misinterpreted out-of-state authority, which actually supports—rather than undermines—Appellants' public policy argument.

The Michigan Supreme Court has made clear that public policy considerations are not only relevant, but indeed central to the duty analysis:

> In Michigan, the question whether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides after assessing the competing policy considerations for and against recognizing the asserted duty. . . .  Thus, the ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a duty.  The inquiry involves considering, among any other relevant considerations, the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented.

*In re Certified Question from Fourteenth Dist. Ct. of Appeals of Tex.*, 479 Mich. 498, 504-05 (2007) (cleaned up).  Here, every one of these considerations supports finding that Hillsdale owed Appellants a duty of care in handling their reports of sexual assault.  If this Court is nevertheless inclined to adopt the district court's categorical bar against a duty as between a university and its teenaged students, then Appellants respectfully submit that this question should be certified to the Michigan Supreme Court.[3]

**Relationship of Parties**.  Michigan courts acknowledge a duty "in each circumstance [where] one person entrusts his care to another person, who is in control and best able to provide a place of safety."  *In re Doe*, 2006 WL 475285, at *2 (Mich. Ct. App. Feb. 28, 2006); *see also Johnson v. Outback Lodge & Equestrian Ctr., LLC*, 2016 WL 930738, at *4 (Mich. Ct. App. Mar. 10, 2016) (stating that generally recognized special relationships include "common carrier-passenger, innkeeper-guest, employer-employee, landlord[-]tenant, and invitor-invitee"); *id.* at *5 (concluding special relationship arose when plaintiff registered for horseback riding camp, placing herself under defendant's control for the duration of the camp).  Here, the district court acknowledged that such a

---

[3] *See, e.g., Geib v. Amoco Oil Co.*, 29 F.3d 1050, 1061 (6th Cir. 1994) (certifying question to Michigan Supreme Court to prevent "the problem of authoritatively determining unresolved state law involved in federal litigation") (citation omitted).

relationship of control *can exist* between a student and a school in Michigan, and cited *zero authority* barring such a finding as between a student and a university.[4]

The district court reached the categorical conclusion that such a relationship did not exist between Appellants and Hillsdale without engaging with *any* of Appellants' duty allegations.  RE 55, Page ID # 898-99.  Indeed, the district court focused on what Appellants did "*not* allege," as if the purpose of the exercise was to preclude a finding of duty.  RE 55, Page ID # 898 (emphasis supplied).  Had the district court engaged Appellants' allegations, as required on a Rule 12(b)(6) motion, the court may have noted that they support finding a special relationship in *this specific circumstance*.  For example, Appellants allege Hillsdale's policies and practices resulted in female students facing "a *heightened* risk of sexual assault, as compared to students at other colleges."  RE 19, Page ID # 222.  This supports a finding of duty.  *See, e.g., Avila v. Citrus Cmty. Coll. Dist.*, 38 Cal. 4th 148, 162 (2006) (holding that college owed a duty to student-players "to, at a minimum, not increase the risks inherent in the sport").

---

[4] To Appellants' knowledge, no Michigan court had held that universities *cannot* have special relationships with their teenaged students.  Other states have found they can.  *See, e.g.*, *Barlow v. State*, 540 P.3d 783, 786 (Wash. 2024) (finding a special relationship exists between a university and its students); *Regents of Univ. of Cal. v. Super. Ct.*, 4 Cal. 5th 607, 625 (2018) (concluding that the "college-student relationship [] fits within the paradigm of a special relationship").

**Foreseeability of Harm**.  There is no question that Appellants allege their assaults were foreseeable.  *See* RE 19, Page ID # 224 ("Hillsdale has long been aware—through both the inordinate degree of sexual assault on campus and the demands from students that the 'Sexual Assault Policy' be reformed—that its students are at a heightened risk of sexual assault on campus, yet Hillsdale continues to refuse to implement and enforce a policy that would actually protect the safety and wellbeing of the students in its care.").  *See also Dawe v. Bar-Levav & Assoc.*, 289 Mich. App. 380, 394 (2010) ("Courts in Michigan have long recognized that criminal acts by third parties can be foreseeable.") (citing cases); *O'Neal v. MCC Mecosta, LLC*, 2023 WL 461844, at *1 (Mich. Ct. App. Jan. 26, 2023) (noting an employer can be liable for its employee's criminal conduct where the employer had actual or constructive knowledge of prior similar conduct, and actual or constructive knowledge of the employee's propensity to act in accordance with that conduct).  This, too, supports a finding of duty.  *Cf. Ware v. Univ. of Vt. & State Agric. Coll.*, 722 F. Supp. 3d 379, 414 (D. Vt. 2024) ("It is a reasonable inference that if UVM's investigation policies were clearer, sanctions were more formal, and students and teachers received increased sexual assault prevention training, conditions on campus may have been less conducive to sexual misconduct.  [Appellants] are entitled, at this early stage, to the assumption that

-18-

improved transparency regarding investigatory procedures would have encouraged increased reporting and, therefore, accountability for assailants.") (cleaned up).

**Burden on Defendant and Nature of Risk**.  Negligence is, at base, about risk.  *See In re Certified Question*, 479 Mich. at 505 (explaining that "the ultimate inquiry in determining whether a legal duty should be imposed" involves considering "the nature of the risk presented").  Courts considering risk allocation in the specific context of a university-defendant, on the specific issue of sexual assault, repeatedly find that risk should be allocated to the university-defendant (and not its teenaged, survivor-charges).  *See, e.g.*, *Karasek v. Regents of Univ. of Cal.,* 956 F.3d 1093, 1112 (9th Cir. 2020) (upholding claim against university, under Title IX, for acting with deliberate indifference to the increased risk of sexual assault on its campus); *Ware*, 722 F. Supp. 3d at 397, 413-14 (same); *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 653 (W.D. Tex. 2017) (same); *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1173, 1183-84 (10th Cir. 2007) (same).  Indeed, this question is entirely settled for the vast majority of universities that—unlike Hillsdale—do not dodge federal funding to limit their legal liability.  *See id.*; *see also* RE 19, Page ID # 222-23, at n.2 (quoting Hillsdale's choice to forgo federal funding "so as to be 'unfettered' by government mandates," and freely "not follow Title IX guidelines on sex discrimination and the handling of sexual assault cases").

-19-

The absence of a remedy under Title IX for students at Hillsdale (and other colleges that eschew federal funding) *supports* finding a duty under tort law—not the opposite. Indeed, the Colorado Supreme Court case on which the district court almost exclusively relied in holding there was no public policy basis to find a duty makes that clear. *See* RE 55, Page ID # 900-01 (citing *Univ. of Denver v. Doe*, 547 P.3d 1129, 1147 (Colo. 2024)). There, the court held that the University of Denver "did not owe its students a tort-based duty to use reasonable care in implementing fair procedures related to the investigation and adjudication of sexual-misconduct claims" because it was "*undisputed*" that the students had a contractual right to such care via the student handbook *and* a statutory right under Title IX. *Univ. of Denver v. Doe*, 547 P.3d 1129, 1147 (Colo. 2024) (emphasis supplied). That is, the risk of harm[5] had already been allocated—*to the university*—such that a "duplicative tort remedy in this situation" was unnecessary. *Id.* Here, the opposite is true: by purposefully evading federal funding, Hillsdale has purposefully evaded responsibility for the harm sexual misconduct causes its students, the risk of which society writ large has allocated to universities (under Title IX).

---

[5] Moreover, as the district court here noted, *University of Denver v. Doe* concerned whether a university owes a duty of care to an alleged assailant in investigating and adjudicating the allegations of non-consensual sexual contact against him, *not* the duty owed to an alleged victim of sexual assault. RE 55, Page ID # 900-01. Given the nature of the two harms—failure to fairly investigate and risk of sexual assault—it seems beyond dispute that the public policy considerations here are at least as significant as in *Doe*.

For the reasons set forth above, this Court should reverse the district court's conclusion, as a matter of law, that Hillsdale owed Appellants *no duty of care* in handling their reports of sexual assault, having itself been responsible for creating and maintaining the environment of heightened risk in which their assaults occurred.

## III.   THE DISTRICT ERRED IN CONCLUDING APPELLANTS FAILED TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Michigan, claims for IIED require proof of:  (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Lewis v. LeGrow*, 258 Mich. App. 175, 196 (2003).  Citing zero law and ignoring Appellants' detailed allegations, the district court summarily dismissed Appellants' IIED claim on the basis of its unilateral determination that "the alleged facts [] do not rise to the level of outrageousness required."  RE 55, Page ID # 904.  This conclusion was error and should be reversed.

### A.   The District Court Ignored Key Allegations

The district court opens its assessment of Appellants' IIED claim by asserting, "[i]n its totality, Plaintiffs' claim for Intentional Infliction of Emotional Distress (IIED) in Count II consists of the following five paragraphs," and then quoting a subset of the paragraphs listed beneath Count II.  RE 55, Page ID # 901. This assertion is wrong.  Notably absent from the Court's recitation is the first

paragraph of Count II, in which Appellants expressly "incorporate by reference each allegation set forth in the preceding paragraphs."  RE 19, Page ID # 255, ¶ 155.  By limiting its analysis to these five paragraphs, the district court failed *even to consider* the many preceding paragraphs supporting Appellants' IIED claim, to say nothing of accepting the allegations in those paragraphs as true.  *See, e.g*., RE 19, Page ID # 224 (alleging that Hillsdale was on notice of the heightened risk of sexual assault on its campus, but ignored student demands for reform, disregarded assaults, and blamed survivors); *id*. Page ID # 240-46, ¶¶ 71, 75, 78, 85-87, 99, 105, 114-120, 123 (detailing Hillsdale's egregious mistreatment of Appellants upon reporting their assaults, including discouraging them from taking further action, representing to their parents that they were lying, and pressuring them to move on by socializing with their assailants).  This failure to consider other relevant allegations, alone, is grounds for reversal.  *Brent*, 901 F.3d at 675-76.

The lack of rigor in the district court's analysis is nowhere more evident than in the following incorrect statement, offered to justify dismissal of the IIED claim: "Plaintiffs indicate in briefing that thus far, no other students have come forward." RE 55, Page ID # 904, at n.4 (citation omitted).  Again, this is demonstrably untrue. Appellants' opposition explains:  "Though thus far only Plaintiffs have bravely come forward *to bring this lawsuit*, the Amended Complaint *makes clear that they are not alone*."  RE 40-1, Page ID # 667 (emphasis supplied).  In other

words, while only Appellants' names appear on the lawsuit, they sought to represent a class precisely because their experiences were representative of Hillsdale's systemic failures.[6]  This is made explicit throughout the Amended Complaint.  *See, e.g*., RE 19, Page ID # 222 ("Plaintiffs are not alone.  Hillsdale students are at a heightened risk of sexual assault, as compared to students at other colleges, because Hillsdale fails to either have or enforce policies designed to reduce the risk of campus sexual assault and/or properly respond to incidents of assault that do happen.  This is no accident."); Page ID # 224 ("Hillsdale has long been aware—through both the inordinate degree of sexual assault on campus and the demands from students that the 'Sexual Assault Policy' be reformed—that its students are at a heightened risk of sexual assault on campus, yet Hillsdale continues to refuse to implement and enforce a policy that would actually protect

---

[6] To the extent that "other students hav[ing] come forward," RE 55, Page ID # 904, at n.4, would have impacted the district court's conclusion, this also underscores why it was improper for the court to dismiss this claim without discovery.  *See El-Hallani*, 623 F. App'x at 735 ("[T]he court must be aware that the plaintiff will have limited access to the crucial information regarding how the defendant treated other[s].").

As it happens, other students *have* come forward to Appellants' counsel since Appellants' case was filed, and shared similar experiences.  These allegations, to the extent relevant to the district court's analysis, could have been included in an amended complaint.  But again, the district court lacked this context when issuing the Order because the district court declined to hear argument and then declined to grant leave to amend, despite the general rule that leave to amend should be "freely" granted "when justice so requires."  *See Wade v. Knoxville Utilities Bd*., 259 F.3d 452, 458 (6th Cir. 2001) (citing Fed. R. Civ. P. 15(a)).

the safety and wellbeing of the students in its care."); Page ID # 227, ¶ 13 (citing investigative reporting on Hillsdale's inadequate Sexual Misconduct Policy); Page ID # 227, ¶ 14 (alleging a "long history of mismanaging student reports of assault"); Page ID # 231, ¶ 26 (alleging it is "well known" among the student body that sexual assault investigations are handled "if at all, more leniently than other violations of Hillsdale's 'Honor Code'"); Page ID # 231-33, ¶¶ 27-28 (quoting from publicly available complaints about Hillsdale's Sexual Misconduct Policy); Page ID # 239, ¶ 63 (alleging that the frequency of sexual assaults and the Hillsdale's improper handling of students' reports is "notorious within the college's student body and has been for several decades"); Page ID # 266, ¶ 215 ("Because Hillsdale has failed to take corrective measures to curb the pattern and practice of peer-on-peer sexual harassment and assault, instead allowing this conduct to prevail, Plaintiffs and Class members have suffered . . . ."); Page ID # 268, ¶ 224 ("The examples in this Complaint are part of a pattern by Hillsdale's administration to diminish and dismiss sexual assault by Hillsdale students.").

The remaining allegations ignored by the district court are detailed below, as relevant to each element of Appellants' IIED claim.[7]  Again, the district court's failure even to acknowledge (let alone credit) these allegations was reversible

---

[7] Though the district court considered only the first element of an IIED claim—outrageous conduct—Appellants address all elements herein.  RE 55, Page ID # 904.

error.  *Brent*, 901 F.3d at 675-76.  Properly considered, these allegations are

sufficient to plausibly allege an IIED claim.  *See, e.g.*, *Al-Watan v. Am. Airlines,*

*Inc.*, 570 F. Supp. 2d 925, 940 (E.D. Mich. 2008) (denying motion to dismiss

where defendant argued that plaintiffs' allegations did not support IIED claim,

finding further factual development necessary to rule on the merits).

### B.    <u>Appellants Plausibly Allege Hillsdale's Conduct Was Extreme and Outrageous</u>

Without the benefit of any discovery, and without discussion of any legal

authorities, the district court decided that Hillsdale's was "not the type of

extraordinary transgression of socially tolerable conduct necessary to proceed with

this tort."  RE 55, Page ID # 904.  In so concluding, the district court made *no*

*mention* of the egregious mistreatment identified throughout Appellants' Amended

Complaint—neither with respect to Hillsdale's deliberate indifference to sexual

assaults on its campus, generally, nor with respect to Hillsdale's conduct toward

Appellants in the wake of their sexual assaults, specifically.  *See* RE 55, Page ID #

901 (citing an incomplete selection of only five allegations as the "totality" of

Appellants' IIED claim).  Both sets of overlooked allegations are sufficient to

plausibly allege outrageous conduct.

First, as summarized in Section II.A, *supra*, Appellants include detailed

allegations that Hillsdale has long and deliberately ignored the heightened risk of

sexual assault on its campus.  It is outrageous, for example, that despite being put

on notice of this problem "through both the inordinate degree of sexual assault on campus and the demands from students that the 'Sexual Assault Policy' be reformed," Hillsdale continues to turn a blind eye to the assaults (at best) and blame assault survivors (at worst).  RE 19, Page ID # 224.  Second, when Appellants were themselves sexually assaulted, they came to Hillsdale in emotionally vulnerable states and placed their trust in Hillsdale by reporting their assaults.  In response, Hillsdale shamed them, explicitly discouraged them from pursuing further action, attempted to turn their parents against them, and insisted they continue to socialize with their rapists.  RE 19, Page ID # 240-46, ¶¶ 71, 75, 78, 85-87, 99, 105, 114-120, 123.  It is outrageous, for example, that Hillsdale told Ms. Chen she was "fortunate" to have been raped and suggested she become "friends" with her rapist to avoid a defamation lawsuit.  RE 19, Page ID # 240-41, ¶¶ 71, 75, 79, 84.  Similarly, it is outrageous that Hillsdale suggested Ms. Villarreal's earlier "romantic contact" was to blame for her rape, suggested she had only reported the rape because she had come to "regret" a "consensual" sexual encounter, and threatened *her* with disciplinary action if she proceeded further with a report.  RE 19, Page ID # 245-46, ¶¶ 109, 121-22.

A jury could reasonably find that Hillsdale's conduct toward these two young women—effectively, tossing them battered, back into a cage with their attackers—was extreme and outrageous.  It was therefore error to dismiss their

IIED claim. *See, e.g., Lewis*, 258 Mich. App. at 197 ("Where reasonable minds may differ, whether a defendant's conduct is so extreme and outrageous as to impose liability is a question for the jury."); *id.* at 198 (finding that an IIED claim may lie where the defendant's act was a "significant breach of trust"); *Gilliam v. Ordiway*, 147 F. Supp. 3d 664, 669 (E.D. Mich. 2015) (noting that "[t]he Michigan Court of Appeals has permitted an IIED claim to proceed based on allegations of interference with parental rights"); Restatement (Second) of Torts, § 46 (1965), cmt. e, f (noting that outrageous conduct may arise from school authorities' abuse of their position, or where an actor proceeds in the face of knowledge that a person is particularly susceptible to emotional distress); *cf. Linebaugh v. Sheraton Mich. Corp.*, 198 Mich. App. 335, 342 (1993) (reversing summary disposition of IIED claim where defendant had drawn an offensive, sexualized cartoon of plaintiff).

## C. <u>Appellants Plausibly Allege Hillsdale's Conduct Was Intentional or Reckless</u>

The second element of IIED may be established in two ways: "A plaintiff can show that a defendant specifically intended to cause a plaintiff emotional distress or that a defendant's conduct was so reckless that 'any reasonable person would know emotional distress would result.'" *Lewis*, 258 Mich. App. at 197 (quoting *Haverbush v. Powelson*, 217 Mich. App. 228, 236-37 (1996)). The Court did not reach this element. RE 55, Page ID # 904. Appellants plausibly allege it.

Some of Hillsdale's conduct, such as the general counsel's hostile call to Ms. Chen's mother and Hillsdale's outright threat to Ms. Villarreal's parents, was targeted behavior that Appellants plausibly allege was "intended to cause [Appellants] emotional distress." RE 19, Page ID # 242, 246, 266, ¶¶ 91, 121, 215; *Lewis*, 258 Mich. App. at 197. Other of Hillsdale's conduct—directed at two young women who were reeling from fresh and violent sexual assaults—was, at a minimum, "so reckless that any reasonable person would know emotional distress would result." *Lewis*, 258 Mich. App. at 197 (cleaned up); *see also Gilliam*, 147 F. Supp. 3d at 670 (finding recklessness where defendants knew plaintiff had mental health issues). Again, the Order is entirely silent on Appellants' actual allegations, which are far more extreme than the Order credits. *Compare* Statement of the Case, Section I, *supra* (detailing allegations) and Argument, Section II.A-B, *supra* (same) *with* RE 55, Page ID # 904 (representing Appellants as alleging that Hillsdale's conduct was "unfair or unreasonable"). Because "[a] reasonable person could conclude" that Hillsdale's conduct "would cause emotional distress," the district court erred in dismissing the IIED claim. *Lewis*, 258 Mich. App. at 198.

### D. Appellants Plausibly Allege Hillsdale's Conduct Caused Severe Emotional Distress

Neither Hillsdale in its motion to dismiss nor the district court in its Order contested the sufficiency of Appellants' allegations as to the final two IIED elements: causation and severe emotional distress. RE 24-2, Page ID # 361-62;

RE 55, Page ID # 904.  For good reason:  both are readily satisfied by allegations that Appellants suffered panic attacks, anxiety, PTSD, insomnia, and depression as a result of Hillsdale's conduct.  RE 19, Page ID # 243, ¶ 99; Page ID # 246, ¶ 123; *see also Gilliam*, 147 F. Supp. 3d at 670 (finding plaintiff's "physical symptoms including rapid heartbeat, dizziness, unsteadiness, fainting, palpitating heartbeat, irregular heartbeat, night sweats, insomnia and nightmares" sufficient to establish an IIED claim).

## IV.   THE DISTRICT ERRED IN CONCLUDING APPELLANTS FAILED TO STATE A CLAIM FOR SEX DISCRIMINATION UNDER MICHIGAN'S ELLIOT LARSEN CIVIL RIGHTS ACT

Michigan's ELCRA was enacted to "target 'the prejudices and biases borne against persons because of their membership in a certain class' and 'to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases.'"  *Doe by next friend Kolokithas v. Alpena Pub. Sch. Dist*., 345 Mich. App. 35, 42 (2022) (quoting *Radtke v. Everett*, 442 Mich. 368, 379 (1993)).  As a remedial statute, the ELCRA must "be liberally construed to suppress the evil and advance the remedy." *Eide v. Kelsey-Hayes Co*., 431 Mich. 26, 34 (1988) (citation omitted).  As relevant here, the ELCRA guarantees students of educational institutions, like Hillsdale, "[t]he opportunity to obtain . . . the full and equal utilization of . . . educational facilities without discrimination because of . . . sex."  MCL 37.2102(1). Discrimination "because of sex" includes "conduct or communication [that] has

the purpose or effect of substantially interfering with an individual's . . . education

. . . ." MCL 37.2103(k)(*iii*).  Plaintiffs can state a prima facie case of

discrimination under the ELCRA by proving either disparate treatment or disparate

impact.  *Duranceau v. Alpena Power Co*., 250 Mich. App. 179, 181-82 (2002).

Here, Appellants allege Hillsdale violated ELCRA by maintaining a sexually

discriminatory environment that favors male students over female students, thereby

depriving Appellants (and other female students) of the full and equal utilization

and benefits of a Hillsdale education.  RE 19, Page ID # 239, ¶ 67; Page ID # 257,

¶¶ 167-68.  The district court dismissed this claim with prejudice, concluding it

could survive under neither disparate treatment nor disparate impact theories of

liability.  RE 55, Page ID # 906-08.  As detailed below, the Order should be

reversed on both accounts.

### A.    Appellants Adequately Allege Disparate Treatment

To state a claim for disparate treatment, plaintiffs need only allege

"sufficient factual content from which a court . . . could draw the reasonable

inference . . . that discrimination occurred."  *Brown v. MGM Grand Casino*, 2023

WL 5489023, at *4 (E.D. Mich. Aug. 24, 2023) (quoting *Keys v. Humana, Inc*.,

684 F.3d 605, 609–10 (6th Cir. 2012)).  Plaintiffs may cite either direct or

circumstantial evidence.  *Smith v. Blue Cross Blue Shield of Mich.*, 2024 WL

3991245, at *3 (E.D. Mich. Aug. 29, 2024) (citing W*hite v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 n.5 (6th Cir. 2008)).

Here, the district court dismissed Appellants' disparate treatment theory—again with reference to *zero* legal authorities—on the basis that Appellants "allege only that Defendant treats *differently situated* persons differently, claiming that those who commit sexual assault are treated better than those who suffer it."  RE 55, Page ID # 906 (emphasis in original).  This fundamentally misunderstands and limits the claim.  Appellants allege men are treated more favorably than women at Hillsdale not just when committing or reporting sexual assault, but because Hillsdale grants men superior access to a safe educational environment.[8]  *See* RE 19, Page ID # 257, ¶ 168 ("Hillsdale . . . deprives Plaintiffs of the full and equal utilization of or benefit from the institution, *including but not limited to*, a sexually hostile educational environment, full and equal safety, full and equal enjoyment of the institution, and full and equal access to the institution's remedial avenues.") (emphasis supplied); Page ID # 258, ¶ 174 ("The educational environment was so

---

[8] To be clear:  even the district court's limited styling of Appellants' claim is plausible.  Appellants allege a sexually hostile environment at Hillsdale, wherein male students *are* treated more favorably when reporting sexual assault pursuant to the Policy.  *See* RE 19, Page ID # 258, ¶ 173.  At the pleading stage, they need not identify those treated more favorably by name.  *See Horne v. Pentastar Aviation, LLC*, 2024 WL 1607017, at *9 (E.D. Mich. Apr. 12, 2024) (citing *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014) (noting that a "plaintiff is not required to identify similarly situated comparators at the pleading stage" and that plaintiffs "will often not be able to answer those questions without discovery")).

tainted that it had the purpose or effect of substantially interfering with their education or creating an intimidating, hostile or offensive educational environment."); Page ID # 239, ¶ 65 ("The intent and effect of Hillsdale's practices and policies is to foster an environment that tacitly accepts sexual violence against its female students for the sake of preserving the status quo and in favor of its male students."). In sum, female Hillsdale students' experience is inferior to that of their male counterparts because of Hillsdale's deliberate indifference to its inadequate sexual assault policies and procedures.

As actually pleaded, Appellants plausibly allege a disparate treatment theory under the ELCRA. As the Order notes, "in interpreting the ELCRA, courts may look for guidance to federal precedent construing analogous federal civil-rights statutes." RE 55, Page ID # 907 (citing *Radtke*, 442 Mich. at 382). This guidance may come from both Title VII of the Civil Rights Act of 1964 ("Title VII") and Title IX. *See MGM Grand Casino*, 2023 WL 5489023, at *4 ("Courts analyze ELCRA disparate treatment discrimination claims under the same standards for discrimination claims brought under Title VII.") (citing *Crane v. Mary Free Bed Rehab Hosp.*, 634 F. App'x 518, 521 (6th Cir. 2015)); *Varlesi v. Wayne State Univ.*, 909 F. Supp. 2d 827, 841 (E.D. Mich. 2012) (describing ELCRA as "Michigan's counterpart" to Title IX). Authorities under both federal statutes confirm the sufficiency of Appellants' disparate treatment allegations here.

Intentionally maintaining a policy known to have a disparate impact amounts to disparate treatment. *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 77 (S.D.N.Y. 2018) (certifying a class disparate treatment claim under Title VII after finding plaintiffs provided "significant proof" of disparate treatment with evidence that defendant was "aware of gender disparities and gender bias" in its policies and practices, but "did not adjust their policies or practices to account for the discrimination women faced," including by not adequately applying corrective measures when women were assaulted); *Loc. 2507, Uniformed EMTs, Paramedics & Fire Inspectors v. City of N.Y. on behalf of Fire Dep't of City of N.Y.*, 2024 WL 4276495, at *6 (S.D.N.Y. Sept. 24, 2024) (finding proof that defendant "operated under a general policy of discrimination" through "evidence of common policies that disparately impact the [plaintiffs]" sufficient for disparate treatment claim) (citation omitted). This is precisely what Appellants allege Hillsdale has done here, and for decades: Hillsdale has long been aware that its deficient Sexual Misconduct Policy has a disparate impact on female students, and knowingly maintained this discriminatory Policy (over the objection of its own student body). *See, e.g.,* RE 19, Page ID # 231-33, ¶¶ 26-31 (detailing student complaints and investigative reporting on Hillsdale's inadequate Sexual Misconduct Policy); Page ID # 239, ¶ 66 ("Hillsdale's practices and policies have the intent and effect of creating a sexually discriminatory environment, in which

female students suffer a greater risk of sexual violence by emboldened perpetrators."); Page ID # 239, ¶ 67 ("Hillsdale's failure to take reports of sexual violence seriously, to effectively investigate, and to take prompt remedial action has the intent and effect of creating a sexually discriminatory environment, in which female students suffer institutional betrayal and are deprived of an equal educational experience."); Page ID # 257, ¶ 168 ("Hillsdale has intentionally created and maintains . . . practices and policies concerning sexual violence, which favor its male students over its female students, including Plaintiffs, and effectively deprives Plaintiffs of the full and equal utilization of or benefit from the institution.").  These allegations are sufficient to state a disparate treatment claim at the pleading stage.

Similarly, maintaining a policy of "deliberate indifference" to campus sexual misconduct amounts to intentional discrimination.  In *Karasek*, the Ninth Circuit held that such a claim "should survive a motion to dismiss if the plaintiff plausibly alleges that (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was 'so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school.'"  956 F.3d at

1112 (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526

U.S. 629, 650 (1999)).  *See also, e.g., Ware*, 722 F. Supp. 3d at 397 (denying

motion to dismiss deliberate indifference claim where plaintiffs alleged UVM's

"policies were generally deficient," causing a heightened campus-wide risk of

sexual assault); *see also id.* at 413-14 (finding that if "investigation policies were

clearer, sanctions were more formal, and students and teachers received increased

sexual assault prevention training, conditions on campus may have been less

conducive to sexual misconduct" by "increase[ing] reporting and, therefore,

accountability for assailants"); *Posso v. Niagara Univ.*, 518 F. Supp. 3d 688, 698-

700 (W.D.N.Y. 2021) (denying motion to dismiss where plaintiffs alleged the

university knew about sexual misconduct on the swim team, but took no remedial

measures to address it); *Baylor*, 240 F. Supp. 3d at 653, 662 (denying motion to

dismiss deliberate indifference claim where university's "policy or custom of

inadequately handling and even discouraging reports of peer sexual assault created

a heightened risk of sexual assault"); *Simpson*, 500 F.3d at 1173, 1183-84 (finding

evidence sufficient to establish that the university had an official policy of

deliberate indifference where plaintiffs alleged they were sexually assaulted by

football recruits, citing evidence that the handbook "does not . . . address the risk

of sexual assault or harassment in the recruiting program").

Just as in *Karasek*, *Ware*, *Posso*, *Baylor*, and *Simpson*, Appellants here allege Hillsdale maintained an official policy of deliberate indifference to the risk that female students would be sexually assaulted. *See, e.g.,* RE 19, Page ID # 224 ("Hillsdale has long been aware—through both the inordinate degree of sexual assault on campus and the demands from students that the 'Sexual Assault Policy" be reformed—that its students are at a heightened risk of sexual assault on campus, yet Hillsdale continues to refuse to implement and enforce a policy that would actually protect the safety and wellbeing of the students in its care."); Page ID # 264, ¶ 206 ("By its acts and omissions, Hillsdale has been deliberately indifferent to the substantial risk that Plaintiffs would be sexually assaulted and/or harassed while at Hillsdale."); Page ID # 264, ¶ 207 ("As a result of Hillsdale's deliberate indifference to this pervasive culture of sexual harassment, Plaintiffs have been subjected to sexual assault by their fellow Hillsdale students, and Plaintiffs and the Class are currently subjected to an ongoing, substantial, increased, above-baseline risk of sexual assault and harassment at Hillsdale."). These allegations are sufficient to state a disparate treatment claim.

### B. Appellants Adequately Allege Disparate Impact

For a disparate impact claim under the ELCRA, plaintiffs must allege: (1) "they are members of a protected class"; and (2) "a facially neutral practice disproportionately impacts or burdens them more harshly than others." *Alspaugh*

*v. Comm'n. on Law Enf't Standards*, 246 Mich. App. 547, 564 (2001) (citations omitted).

Here, the district court rejected Appellants' disparate impact claim, reasoning that Appellants did not "cite any statistics showing that Defendant's practices and policies causally burden female students 'more harshly' than male students." RE 55, Page ID # 908. And here, again, the district overlooked Appellants' allegations of how Hillsdale's deficient Sexual Misconduct Policy disadvantages women, who are statistically more at risk for sexual violence *at Hillsdale*.

Appellants' disparate impact claims arise from Hillsdale's "practices and policies concerning sexual violence, which favor its male students over its female students." RE 19, Page ID # 257, ¶ 168. Though facially neutral, the Sexual Misconduct Policy's flaws include: (1) an opening "Policy Statement" that deters students from reporting by deeming all activity that occurs outside of heterosexual marriage immoral; (2) failing to delineate what is prohibited behavior; (3) failing to specify consequences for prohibited behavior; (4) failing to directly discuss consent and incapacitation; (5) failing to specify under what circumstances confidentiality will be maintained; and (6) allocating all details of investigation and punishment to the discretion of the Deans, making it impossible to know what actions or decisions to expect in any given circumstance. RE 19, Page ID # 230,

233-38, ¶¶ 22-24, 32-39, 40-41, 42-47, 48-60. Because Hillsdale's female students are disproportionately affected by sexual assault, female students disproportionately suffer the effects of these flaws, hindering their full and equal enjoyment of a Hillsdale education as compared to their male counterparts. RE 19, Page ID # 239, 257-58, ¶¶ 173, 65-67, 169-170.

While Michigan courts "have considered statistical evidence when weighing claims of disparate impact under the ELCRA," *Halabicky v. Univ. of Mich.*, 2009 WL 912629, at *7 (E.D. Mich. Mar. 30, 2009), plaintiffs may make out a prima facie case of disparate impact by "alleg[ing] facts at the pleading stage or produc[ing] statistical evidence demonstrating a causal connection," *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 543 (2015). Here, *Lyman v. Montclair at Partridge Creek, LLC*, is instructive. 2023 WL 6096678, at *1 (E.D. Mich. Sept. 18, 2023). Lyman, an African American, was rejected when applying for an apartment pursuant to defendants' policy of automatically excluding people with a felony conviction. *Id.* In support of his ELCRA disparate impact claim, Lyman cited statistics establishing that individuals with felony convictions are disproportionately represented by African Americans nationally, state-wide, and locally. *Id.* at *2. Defendants contended Lyman's statistics were generic and overbroad, reflecting only flaws in the criminal justice system, and not that the policy resulted in a disparate impact at their housing

-38-

complex. *Id*. at \*3, \*4. The court rejected these arguments and denied defendants' motion to dismiss, noting: (1) "even countrywide statistics may be sufficient to plead a disparate impact claim where a challenged policy has a clearly disproportional effect on a protected class" and (2) even if plaintiffs' statistical analysis may ultimately "prove vulnerable or even fatally defective[,] such an inquiry is highly fact-intensive and inappropriate for resolution at the motion-to-dismiss stage." *Id*.

As in *Lyman*, Appellants' provide sufficient statistical support for the fact that females suffer sexual violence at a significantly higher rate than males, particularly while in college. *See* RE 19, Page ID # 258, ¶ 173 (citing RAINN statistics); *see also* RE 19, Page ID # 257, ¶ 169 (alleging Hillsdale knew of the sexually hostile environment for women based on prior student reports and complaints regarding its Sexual Misconduct Policy and handling of sexual assault investigations); *cf. Butts v. McCullough*, 237 F. App'x 1, 9 (6th Cir. 2007) (rejecting disparate impact claim where plaintiff "failed to come forth with *any evidence* of the impact of the [challenged] rule" on a protected group) (emphasis supplied). This, in turn, supports Appellants' allegation that Hillsdale's female students are the group negatively impacted by its policies that deter students from reporting, its practice of concealing allegations of assault instead of conducting proper investigations, and its tacit sanctioning of assault by male students by

-39-

failing to take remedial action. *See Iqbal*, 556 U.S. at 663 ("A claim has facial

plausibility when the pleaded factual content allows the court to draw the

*reasonable inference* that the defendant is liable for the misconduct alleged.")

(citation omitted) (emphasis supplied).  The district court's refusal to make that

reasonable inference, which must be drawn in Appellants' favor at the pleading

stage, was legal error.  *Id*.

     Because Appellants sufficiently allege facts supporting a plausible disparate

impact theory under the ELCRA, the Court should vacate the district court's

dismissal of Appellants' ELCRA claim.

## **CONCLUSION**

     For the foregoing reasons, Appellants respectfully request that the Court

reverse the district court's Order granting Hillsdale's motion to dismiss

Appellants' negligence, IIED, and ELCRA claims with prejudice, and remand the

case for further proceedings.


Dated:  December 13, 2024         Respectfully submitted,

                             /s/ *Mark P. Chalos*

                             **LIEFF CABRASER HEIMANN &**
                             **BERNSTEIN, LLP**
                             222 2nd Avenue South, Suite 1640
                             Nashville, TN 37201
                             (615) 313-9000
                             mchalos@lchb.com

Annika K. Martin
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
(212) 355-9500
amartin@lchb.com

Michelle A. Lamy
Caitlin M. Woods
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Rafael, CA 94111
(415) 956-1000
mlamy@lchb.com
cwoods@lchb.com

Counsel for Appellants

## **DESIGNATION OF RELEVANT DOCUMENTS**

| District Court Record Entry # | Document Description | Page ID # |
|---|---|---|
| RE 19 | 1/11/24 – Amended Complaint | 221-69 |
| RE 24-2 | 2/1/24 – Brief in Support of Motion to Dismiss | 298-375 |
| RE 40-1 | 4/15/24 – Brief in Opposition to Motion to Dismiss | 656-715 |
| RE 49-2 | 5/13/24 – Reply Brief in Support of Motion to Dismiss | 812-47 |
| RE 55 | 9/13/24 – Order Granting Motion to Dismiss | 889-920 |
| RE 56 | 9/13/24 – Judgment | 921 |
| RE 57 | 9/17/24 – Notice of Appeal | 922 |

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limit of Fed. R. App. P.

32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R.

App. P. 32(f), this document contains 9,657 words.

This document complies with the typeface requirements of Fed. R. App. P.

32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because

this document has been prepared using 14-point Times New Roman.

Dated: December 13, 2024          <u>By: /s/ *Mark P. Chalos*</u>
                                   Mark P. Chalos
                                   Counsel for Appellants

## <u>CERTIFICATE OF SERVICE</u>

I certify that Appellants' Opening Brief was filed via the Court's electronic filing system on December 13, 2024, which will serve electronic notice to all parties of record.


Dated: December 13, 2024          By: <u>/s/ *Mark P. Chalos*</u>
                                   Counsel for Appellants